Okay. Good morning, your honors. May it please the court. My name is Phil Byler, representing the plaintiff's appellant, Don Shooter, who brings this appeal from the district court's judgment, relying upon qualified immunity to grant dismissal on a 12B6 motion of the Section 1983 Due Process Equal from the Arizona House of Representatives without a hearing before a committee of his peers, based instead on a law firm report that was done by private interviews, and that was edited by Defendant Mesnard before its release to remove exculpatory information about Shooter before its release, and thus the House didn't have that exculpatory information. That folded Shooter for as yet authorized, unauthorized, and thus it was retroactively applied zero tolerance sexual misconduct policy. Where is the clearly established precedent, in your view, that establishes that the Due Process Clause of the federal Constitution regulates the internal procedures of the state legislature in expelling a member? Okay, you jumped ahead to, you know, I think is the core issue. I was going to set it up as to why we get there. What we say is the clearly established precedent is, one, the right to a due process hearing and being advised of the evidence against you, as I discussed in the brief. There's Green v. McElroy and the like. Two, the anti-retroactivity principle, quoting Lansgraff v. USI Film. And three, the fundamental right to be free from gender discrimination, and I quote Davis v. Passman. Well, on the last point, just to deal with the last point, which I guess is the equal protection point, and then I really do want you to get back to Judge Collins' question, because it's quite... Okay. But wait a minute, just a minute, sir. What I want to know about the equal protection case, is there any mention of sex discrimination in your complaint? Well, what the allegation is... Yes or no, is there any mention of sex discrimination in your complaint? It's not called sex discrimination per se, but it is sex discrimination, because shooter is treated differently, and the complaint makes this very clear... I would like to challenge your complaint. There is a sentence that says equal protection. It doesn't say who's being compared to what, or what the classes are, or anything about that. Oh, no, no, no. There's specific facts in terms of the allegations that the claims and evidence against Rita Ugenti were far worse than what were the allegations against shooter. In fact, even the law firm concluded that most of the allegations that were made against shooter were without merit. But there is no mention of sex discrimination? That's inherent in when you say you treat the male unequally to the female. No, it could be that... It appeared that what you were really saying was that you were treating her better because she was part of the in group, essentially. In any event, go back to Mr. Collins, to Judge Collins' question. Okay. I don't think that's what the question was. Go back to it, because this is the key question in the case. The district court recognized that the cases didn't need to be right on point, but he still asserted that he wasn't seeing existing precedent. But I think the way he approached it... The standard for qualified immunity is very clear. You have to show that it's beyond debate, that the precedent is so reasonable. Any reasonable legislator would have known that you cannot conduct an expulsion in this way, and I don't see any cases that even come close to saying that. Well, but our response to that is that, yes, they were on fair warning that what they were doing was unconstitutional. I direct your attention to the case of Hope v. Pelzer, 536 U.S. 730. It's a hitching post case. What does that have to do with expelling a member of the state legislature? Because we have a novel case, and what Hope v. Pelzer recognizes is that you can get that fair notice, that clear warning from general statements of constitutional principle. That's true, but you... That when you have a novel case, you're not going to have a specific fact case. A lot of these qualified immunity cases come up in the context of warrantless searches, of excessive force. We have a unique situation here because one of the facts we plead is, never before was an Arizona representative expelled without a committee of the peers reviewing and deciding and recommending that House resolution. I'm sorry. But the problem is this. Let's assume, for present purposes, that you've shown a sufficient... In order to even get where you wanna go, you have to have a stigma plus standard, and let's assume that you've done that. The question then is, what kind of process is due? And you're saying, well, you're supposed to have a committee hearing. Well, maybe you could do it with having an administrative law judge or something. I mean, who says it has to be what it always was? That's the question. Well, who says... I think that's the established practice. And may I note, Monserrati v. New York State Senate case, where a state senator was expelled. The Second Circuit, affirming the Southern a stigma plus interest, which, of course, we argue in the briefs is what's applicable here. The district court didn't recognize that. And that the due process right was to a committee hearing, which, in that case, Monserrati got. What we're saying, in effect, is... He didn't say it was to a committee hearing. He said he had a committee hearing, and that was sufficient to meet whatever due process right there was. Yes, it was, but... He didn't say that if they'd done something else, it wouldn't have been sufficient. Well, what they did here was not due process. You are not having due process when you have a private law firm do a report, send it to the House Speaker, who then edits it, strips out the exculpatory information that's not then provided. You don't have a committee hearing in which there's cross examination, presentation of evidence. The normal process that's always been followed before, and that's why it is due process. And that's just what is consistent with the general due process principles of Greenby, McElroy, and the other cases, Matthew V. Eldridge. And yes, I know, but in Hope v. Pelzer, what the Supreme Court said was a general constitutional rule, a rule already identified in the decision law, may apply with obvious clarity to the specific conduct in question. And the court went on to say, officials can be on notice that their conduct violates the established law, even under novel factual situations. That's what we got. Indeed, they cited an O'Neill case where we expressly rejected a requirement previous cases be fundamentally similar. That's what I have to rely on here because we have this situation that was totally novel. But it cannot be that you don't have due process restrictions in the case. Because what you then do, which is what I think the district court did, is to excuse the inexcusable just because there's not a specific case before, and there's not a specific case before because nobody had ever done it before this way and was obviously lacking in due process. That's the problem in this case. And I might know that the district court didn't follow the two step associative procedure, associative e-cats procedure, but it's recognized in associative e-cats. It's recognized in another case... Well, you know that the saucier that you have to do them in a particular order has been overruled in Pearson. There's no requirement to do them in any particular order. I beg to differ with you, Your Honor. In Pearson v. Callahan, they said it still may be discretionary with the court to do it that way. And in Clumhoff v. Rickard, the Supreme Court, also Alito writing, said it's often beneficial because it promotes the development of constitutional precedent and is especially valuable with respect to questions that don't frequently arise. No, but it's ultimately a discretion. I myself think it's quite wise often to decide the constitutional question, but it's not mandatory and so this isn't going to be mandatory. So let's go back. What I'm indicating here and what I brief is, by not following two step procedure, which Supreme Court said, look, it may be still the way you should do it, you end up missing the force for the treaties. You end up with an error. I'm asking a question and when we ask a question... Stop speaking, please. Okay, I'm sorry. What is your best case that your client has a property or liberty interest in his office in the Arizona legislature? Okay, it's the stigma plus interest, liberty interest. And the closest case onto the facts is Monserrati v. New York State Senate, 559 Fed 3rd, 148, which is a Second Circuit opinion. And that's why I referenced before Judge Polly's Southern District and the Second Circuit rule. Stigma plus is applicable there. And that's what we say, stigma plus is applicable there. And they went on to say, due process happened to be provided there because there was a committee hearing. We say, yes, that would have been due process and was, but we didn't get that committee hearing. We got something else that involved a manipulation of a report that excluded exculpatory information. And indeed, one of the representatives, and we plead this, Kelly Townsend said afterwards, we followed the wrong process. There's never been before, never, an explosion of a state representative who's been elected by his constituents by this process of having a private law firm go out and then you submit it to the House Speaker, who then plays with it to get a certain result. That's never happened before, and that's not due process. I'm sorry. First of all, this process, having an outside entity do a neutral investigation is widely accepted in the corporate world now, and is regarded as fairer in many instances than having the interested parties be triers of fact, essentially. So why... How would someone should know that that wasn't the case? Clearly, you know it's not the case when you hire a law firm and you're paying it. You're paying it. That's also some of the facts that are overlooked here. And that report is then edited. You don't have, even in the corporate sphere, reports that then are manipulated and accepted as, gee, fair. It wasn't a fair process here. And I'd also say that nobody would say, gee, we can do away with the trial. All we need is some law firm to go out and write up a report. I can tell you from over 40 years' experience, that's a bad idea. I personally think trials by jury are the best way to decide disputed issues. But we have a trial process. The process is about mostly, and essentially, having an opportunity to be heard in the context of a hearing where you can present witnesses, and you can cross examine, and you can make statements that organize the evidence. You don't have that with a law firm report. And what purposes you may have in terms of a law firm report in a corporate context, totally different than what we have here in this public process. That law firm report is not good enough, and certainly was not good enough on a plea of facts and what the real facts were, is that it had been manipulated. It had been manipulated. The law firm report... Okay, you're down to a minute and a half or so. Do you wanna reserve time? Yeah, but I just wanna make one quick point, last point. The law firm report applied retroactively, and yet to be adopted policy that was contrary to employment law. That's a retroactivity point that I make. That's not due process. That is something that is not my path and whatever else you can give me. Thank you very much. And I've found that sometimes with the technology, I'm a little slow hearing when you start questions, and if I talked over you, I apologize. Thank you very much. Let's see, we have three lawyers' assistants. You wanna tell us how you're dividing time and what your plan is? I thought we were gonna be told this in advance, but we apparently were not. Yes, Your Honor. Good morning. This is Steve Tully on behalf of the Mesner. We'll be going for six and a half minutes. Looks like somebody's got it up there on the screen, and then Adam's attorney will go for six and a half, and the state will get the last two. Okay, go ahead. I'm having a little trouble hearing you, so speak a little further into the mic, please. Sorry about that. I'll try to talk to you. I have a question about that. I mean, it seems to be that where we were discussing before is a much more fruitful area, because... I mean, is your ultimate position that the Arizona House can... Suppose it has... It's 90% Democratic and 10% Republican, and it just decides to expel all the Republicans. Is that fine? I mean, fine meaning not reviewable by any court, because it's legislative. It doesn't seem very legislative, first of all, and second of... So, what's legislative about this? It's a motion. The right to expel members is granted to the House by the Arizona Constitution. Okay. So, it's a specific right to them to vote, and they need a two thirds vote. And so, it's a legislative right in the Constitution. So, what about my hypothetical? It's unreviewable? Yeah, if you're a hypothetical and they filed a motion, and they moved to expel the member, and they got two thirds of the vote... All other Republicans is my hypothetical, because the Democrats had a super majority, and they just felt to expel all the Republicans. Right. Well, I mean, I think the question sort of assumes that the law is the only limit upon conduct, Your Honor. I mean, currently, the speaker... I understand that. What's the answer to her question? Well, my answer is yes. If there was 90% and they filed a motion to expel a member for being what they thought was disruptive, and they got the vote... I don't think it's disruptive. They just don't want any Republicans. As long as they meet the statutory requirements... It's not easy to run a legislature if nobody gets up to dispute you. It's disruptive because they're getting up and making speeches about why we're wrong. Right. Well, if you have over two thirds of the members, you can pretty much get everything through already. So, your question is, it's a hypothetical. I don't think there's any time in the history of this country that it has occurred, but if it were to occur, then it would be within the right of the legislature to do so, and it would not be subject... The members of the House could not be sued by the people who got... The members who were expelled for damages under 1983. But your position doesn't depend on being sued for damages. It could be sued for an injunction, and you'd still be saying the same thing, right? If they got the process provided by Arizona Constitution, then they could move for an injunction. So, in this case, what is the process that the law requires? It requires a two third vote of your fellow members to expel you. All right. Am I correct that we do not need to go there to decide this case in your favor? Is that right? Right. But my point is this, that's the process that he was entitled to. If he didn't get that process, he'd have a claim. He'd probably have an injunctive claim in the Arizona State Courts saying, you have to enjoin that action, the expulsion, because I didn't get the process that the law requires. But he got the process the law requires. And those are the rules. And so, this is a quintessentially a legislative act. And so... Excuse me, why is it quintessentially a legislative act? It doesn't seem to me that expelling people from your body is a legislative act. A legislative act is making a law, or doing something towards making a law. This goes to the composition of the body, and I don't know why that's a legislative act. Well, I'm especially honored to disagree with you, because it is a right of the legislature, contained within the Constitution. It may be, but that is not equivalent to a legislative act. Well, if it's a right of the legislature to do something specifically granted by the Arizona Constitution, a right that mimics a right that's in the US Constitution, it's granted to the US Congress, and then the legislature is exercising that right, it's exercising a legislative right granted to the Constitution, I don't know how, frankly, Your Honor, it could be called anything but a legislative action. It's an action of the legislature. It was done by... They filed a... Just like a bill, they filed a motion to remove the member, and the members were all voted, just like a bill, and they had to get a two third vote. Unlike most bills, they had to get a two third vote, and they got it, and they elected it. And so to me, it's our position, Your Honor, that this is a quintessentially legislative act, and that the act was... And so therefore, it is... He is absolutely immune from suit. And the law is clear on that issue, and that for any actions within the legislative sphere, that he's immune from suit. And I can sit here and quote a bunch of cases all along. He was bribed, that's the Chappell versus Robbins case. But there are many legislative acts, i.e. If the legislature passes a statute that says nobody can speak on the streets of Phoenix, that's reviewable. It's a legislative act, but it's nonetheless reviewable under constitutional principles. So the fact that it is a legislative act isn't sufficient. Your... The suit for damage is based upon my client, Mr. Mesnard, taking a legislative act. So yes, if they pass a law that said he can't exercise the First Amendment, the law would be reviewable. This court would strike it down. But they couldn't sue Mr. Mesnard for voting on it, and that's the difference. They can't sue Mr. Mesnard and say, hey, we've been damaged by your vote. They can only challenge the law and get the law returned. Okay, your time is up. Thank you very much. I gather the next person speaking is Ms. Lamb, is that right? Yes, Your Honors. Good morning, and may it please the court. My name is Betsy Lamb, and we represent Appellees and Jenae Adams. I think it's important to note just at the onset, the factual distinction with respect to the Adams defendants as opposed to the state or the Mesnards. Mr. Adams, at the time of the expulsion process, was the former chief of staff for the governor's office. So everything that has been said this morning by Mr. Beiler and that has been addressed in the briefs with respect to the process that Mr. Shooter alleges he should receive, and the alleged violation of his constitutional rights, all fall in the legislative sphere, as Mr. Tully just explained, and do not involve actions initiated or participated in by Mr. Adams. So... Is anybody gonna defend the district court's opinion? Yes, and I would... On the qualified immunity question, because I think that's what I'd like to hear about. Yes, and I would love to turn to that. The key deficiency, it seems to us, in Mr. Shooter's briefing is that he's attempting to define the constitutional rights at such a high level of generality, that he falls into the trap that the US Supreme Court has repeatedly rejected. So we see that, for example, in the White v. Pauley case in 2017. Exactly what the court there cautioned against is what would happen here if we are to accept Mr. Shooter's characterization of the clearly established law. So in the White v. Pauley case, the court, as you know, stated that the articulation of the clearly established law requires either binding precedent on point or a robust consensus of cases from other jurisdictions that place the issue beyond doubt, such that any reasonable official would have known that the acts alleged would have violated Mr. Shooter's constitutional rights. May I ask, as was noted, do we have at least the discretion, if not the mandate, to decide the constitutional issue first? Do you review on the constitutional issue and the merits of it? I think you certainly can. I want to know what, yes, we certainly can, and I want to know what your position is as to whether there was a constitutional violation here. Of course. I think regardless of which prong the court starts with, the individual defendants prevail, and particularly with respect to the Adams and Olive Spleen. I think there's three issues with respect to Mr. Shooter's alleged argument regarding the first prong, which is the existence of a constitutional violation in the first place. First, he cannot articulate a viable property right or liberty interest. Why not a liberty interest? Why isn't this like the Montserrat case, and why wasn't it correct? So, Your Honor, in the reply brief, I think, is the clearest articulation of Mr. Shooter's alleged liberty interest, where he contends that he has a sigma plus liberty interest because he was found to have created a hostile work environment and was expelled from the House of Representatives as a result of that. Great. I want to know why isn't this completely parallel to Montserrat, and why isn't that opinion correct? Well, I think the Montserrat case is not at a high level. It's not comparable to our case here. It's addressing the expulsion of a New York senator under New York law, and that's important, I think, because when you look at the court's decision in Montserrat, while Mr. Shooter argues that they found a sigma plus liberty interest, there's actually, in the opinion, no analysis of whether a sigma plus liberty interest exists. I thought that that was a quite extensive analysis. I read the opinion. It was a Judge Calabresi opinion. It was pretty well done. Right, and I don't dispute that the opinion is well written, but in the opinion, at page 158, it states, the Montserrat appellant... I'm wrong about it being a Calabresi opinion. That was a different one. Go on. They claim that Montserrat was deprived of a liberty interest and reputation, a so-called stigma plus claim. They say, to prevail on such a claim, you must show these two aspects, and then without applying those two prongs, they say, but critical to this appeal, the availability of adequate process defeats a stigma plus claim, and then the remainder of the opinion is talking about the adequacy of the process there. So, you view them as assuming that there was a stigma plus interest, there was adequate process to defeat that claim, and not actually addressing a stigma plus issue. Correct, Your Honor. Correct, and the case that they rely on for the stigma plus liberty interest test is the Velez v. Levy case, which is not comparable here to the expulsion of a state legislator. That case involved the removal of an elected member of a school board. Why is that different? Excuse me. Why is that different for this purpose? Of course. So, in those two cases, while they rely on different law, the statutes that they're relying on involve a requirement that there be a specific finding before the elected official can be removed. That is not the case under Arizona law. There's no statute and no constitutional requirement of a committee hearing or a finding of criminality prior to an expulsion resolution and vote. In the Monserrati case, when they're addressing, they assume stigma plus, and then they address whether the senator had sufficient process. In that case, legislative law at issue, legislative law section 3 expressly provided that in order to expel a member, the expulsion power only became after the report of a committee inquired into the charges against that member. We don't have any such requirement here. So, I think that case would not constitute any sort of notice, let alone a binding precedent or a robust consensus of cases that would have placed anyone in Mr. Adams or Mr. Mesnard's position on notice that their alleged conduct violated a stigma plus liberty interest of Mr. Shooter. I think the other key fact on the Velez case that I would love to address, if I may have a few more seconds, is that in that case, the court ultimately said that while it recognized a stigma plus liberty interest for the board member and it allowed a claim by the actual actor that effectuated her removal, it barred the claims by all of the other defendants and said they were too attenuated because other defendants, in that case it was the other board members and the investigative team, that those individuals didn't actually have the power to effectuate the process that the board member was claiming she was deprived of. Well, here that same fact pattern holds true with respect to Mr. Adams because Mr. Shooter is alleging that he was entitled to a Senate committee hearing, that he was entitled to confront his accusers, that he was entitled to not have the sexual harassment policy applied to him, but yet with respect to Mr. Adams, he had no power to afford or deny those protections that are at the heart of... One last question. On your understanding of stigma plus, I gather, the plus has to be an independent property right or liberty interest. Well, that doesn't make a lot of sense, does it? Because if that's true, then you don't need the stigma, you just need the plus. Correct. And I don't think that that's definitely not my understanding of the law. The plus has to be an actual alteration in status. And in most of the cases in which it comes up, that takes the form of a loss of employment or an inability to secure your employment of your choice. So, not being a senator anymore, a state senator, sounds like a loss of status, no? It's an alteration in status, for sure. It did not prevent Mr. Shooter from running for office again in the future. And in fact, a few months later, he did run for office again, and it did not prevent him from seeking any other employment, nor does he allege that he has been prevented from his profession of choice in the future. Did he win when he ran again? He lost in the primaries against another... That have something to do with the stigma plus, the fact that he had a stigma and now at a plus? Your Honor, respectfully, I know that issue's not before the court, but there is a... I know. What I'm saying is the whole idea of the stigma plus is that the stigma has some weight in addition to the plus. I think the nature of an elected office is quite different than the inability to get private or government employment. And I think there are a number of cases, including from the Ninth Circuit, that recognize that an allegation that someone has been prevented from seeking elected office, including on the basis of defamation, is too speculative in nature. I don't think that's critical to the results. But he wasn't prevented from running. He was taken out of an office that he had. So it was... I don't understand this part of your argument very well at all. And I thought in your briefs, or even more, or somebody was, I don't know if it was which defendant, took the position that essentially that the plus had to have its own liberty or property interest, which can't be right. Correct. Correct. I don't think it has to be... It does not have to be a separate property interest. All right. Thank you very much. You've been very helpful. The last person to argue is Mr. Horne. Do you really want to argue? Just very briefly, Your Honor. May it please the court. My name is Jeremy Horne. I represent the state of Arizona. I'll be very, very brief. The appellant has waived any argument about the dismissal of the state. He did not respond... The appellant did not respond to the... In the district court, the motions to dismiss... I really can't hear you. I'm sorry, Your Honor. The appellant has waived any argument by not responding to the state of Arizona's motion to dismiss before the district court. And the appellant has further waived any argument about the dismissal of the state by not mentioning it or addressing it at all in their opening brief or their reply. All right. Fine. Thank you very much. Mr. Horne, can I ask one question related to... That's actually the question you asked Mr. Trapali. What is the state's position as far as whether or not... As long as they go through the process and they have two-thirds vote, the process set up by the Arizona Constitution, that this isn't viewable. What's the state's position on that? Your Honor, the state would submit that the Constitution requires a violation of the House rules. And the House, by the Constitution itself and by the law, is allowed to make their own rules. So, so long as there is a stated violation of the House rules, whatever the House decides their rules are, then so long as they get the two-thirds vote under the Arizona Constitution, then the House is able to determine... And including to expel members of the... I mean, it seems to me that that ought to be off the table as something that is quintessentially legislative because it has to do with the composition of the body that's making... that's being legislative. And if you just let the body expel whoever it wants with absolutely no oversight by anybody, you could completely undermine democracy, could you not? Your Honor, the problem here is there are no real judicial parameters to decide what would be a good, sufficient cause, what... essentially, what would be a valid House rule, what would not be a valid House rule. So I think... Mr. Horne, what if, all of a sudden, what if you had a minority member and you actually had some other members of the Senate saying, you know, we're kicking this guy out, this woman out, because they're a minority? I mean, is that... I mean, would there be... would that be reviewable? No black members of the legislature. I don't know, Your Honor. I don't know, Your Honor, but in that instance, there's no even articulated violation or alleged violation. I know, that's not this case. We're just trying to figure out if it's reviewable. Go ahead. You don't know whether or not the Equal Protection Clause would bar a state legislature from expelling members based on race? Again, without knowing the full hypothetical? That's the full hypothetical. We have a vote, somebody stands up and says, we don't want any black members of this legislature, 100 to 1, they agree, and he's out. Very well made. All right. Thank you very much. It's an interesting case. The case of Shooter v. Arizona is submitted. Judge Berzon, does Mr. Byler have... didn't he have a minute left? Oh, I'm sorry. Yes, you do. Thank you for reminding me. Mr. Byler. We can't hear you, Mr. Byler. You're on mute. Yeah, I know. The director said you're on mute. Okay. Can I just ask you a question, Matt, out of the box? Do you agree that the state was properly dismissed and you don't challenge that? Under, well, yes. And I didn't spend time because I didn't want to, you know, wait. But I very much disagree with the idea that a state legislator can bounce people because they're Republican, or whether they're a minority. Or in this case, what set it all off was Shooter threatened to use his subpoena power to ferret out corruption. And that got a response from Adams. So, Mr. Byler, let me... you only got... I've got a question I've been wondering. Please. So, you want us to review... this isn't race or something like that, that I think would be an easy... but you do want... essentially, your arguments on the merits are that he's getting... he's having political retaliation. That's what happened to Mr. Shooter for these reasons you're saying. But, I mean, there's a real federalism problem here, I think, and that you want us as federal judges to sit in judgment on that. And I get the whole... if it's a race issue or something like that. But this issue, you basically want us to judge as to whether or not this is politically motivated or whether or not... I know at this stage, it's as much as... but you want a federal court to sit and... whether or not this was badly politically motivated or whether it was, as your opponents say, based on misconduct. And I... isn't there a real federal... do you really want federal courts doing that regularly with these kind of decisions? Isn't that intrusive, I guess, into the... I would say no, it's not intrusive because what you're talking about is a federal court upholding federal constitutional right to due process, equal protection, no retroactivity. I don't think that raises a federalism issue because the problem here was the Arizona State Constitution, all it says is may expel. It doesn't state the process. Historically, traditionally, it was always a committee of the peers. But why is that superior? I mean, for example, in the Montserrat cases, I understand... did Mr. Schuter have the opportunity to reply to the written... the extensive written report, either in writing or orally? Orally, he certainly did. What about in writing? No, and not even orally. The report was... when it was issued, he was told he'd have five days to respond. Four days after it was issued, the vote was held. He was deprived of a right to reply. And when you... in terms of orally, he never had any opportunity except to talk about mitigation when they took the vote. But that's... the horse is out of the barn. He didn't have a fair opportunity, and that's why I do say you got to look at the facts of this case. All right, just a minute. He didn't have the opportunity when the vote was held to get up and say that this report is wrong, and here's why it's wrong, and... He had the opportunity then, but at that point, you have everybody reading a report without the benefit of a committee hearing that he didn't have any cross-examination right, he didn't have a statement, and so you don't have the opportunity... But this is all in the nature of a pre-termination hearing, essentially. Or process. And the case law, even if this was an employment case, there usually is no requirement of an evidentiary hearing before a decision is made, isn't it? Yeah, but that's not a good analogy, because in the employment cases, you will have a post-termination hearing with respect to an expulsion, and so it's entirely different. And I repeat, what is the effective process is the process when you're reviewing what the facts are, and that wasn't afforded to Don Shooter. All he could do was... The horse was out of the barn at that point. There was no opportunity to cross-examine, present his own witnesses. He was deprived of the opportunity even to comment on the report and collect, you know, what was wrong with it. Wait a minute, I thought you said he wasn't deprived of the opportunity to comment on the report, he was able to comment on the report. No, the report was issued, he was promised five days to be able to, and that didn't happen. They voted before then. And might I add, Monserrati, you don't get into a process discussion without having concluded that there was stigma plus. Thank you very much. Okay, thank you for the time. It's a little interesting with the technology, and if I somehow spoke over somebody, I didn't mean to. All right, Shooter versus Arizona is submitted. We'll go to the last argued case of the day, Gary Wilson.
judges: Berzon, Collins, Vandyke